CASWELL DRISCOLL ET AL. v. WINCHESTER REPEATING ARMS DIVISION OF OLIN INDUSTRIES

SUPERIOR COURT      NEW HAVEN COUNTY      FILE No. 69258

Memorandum filed March 22, 1948.

*Armen K. Krikorian* and *James F. Rosen,* of New Haven, for the Plaintiffs.

*Wiggin* and *Dana,* of New Haven, for the Defendant.

WYNNE, J. The enactment by Congress of the Fair Labor Standards Act (52 Stat. 1060, 29 U. S. C. §§ 201-219) was but another beacon to light the long, dark and weary road of industrial progress. Only in forward-looking legislation has the country found hope of ending the continuing clash between capital and labor. When a court is called upon to interpret a provision such as this, it should never be forgotten that it is the spirit of the law that is most important. We establish rules of conduct, not for the few who do not need them, but for the great majority of those of us who do.

The immediate response to labor's vindication in its struggle to outlaw injustices was to start litigation on such a wide scale as to give the country pause. And the Portal to Portal Act of 1947 (Pub. L. 49, 80th Cong., 1st Sess., Chap. 52) marked the inevitable swing of the pendulum back. Human nature in the aggregate changes by such slow degrees as to be scarcely perceptible in any era, even ours.

Labor's best friends will agree that there were excesses. There always are in the ferment of mankind's upward struggle. In this case, counsel for the plaintiffs were prompt to disavow the philosophy of portal to portal disputes. They claim these cases are for back-pay wrongfully withheld,—that they give melancholy proof to the indictment against some employers for rapacity and dishonesty. But the court is unable to agree.

Treating the cases as not outlawed by the Portal to Portal Act, but rather as cases where claims are being asserted for wages honestly due, the court is of the opinion that the plaintiffs have not shown that they are entitled to any back pay. On

the evidence, the court is convinced that the plantiffs (in common with others who are not even suing) entered upon their employment for definitely designated tours of duty, fully understood and made matter of record on their respective time cards. They have been paid the full wages to which they were entitled on the terms and basis of their employment.

It may be that a custom developed to urge the guards to be so prompt in reporting that the tired men whom they were to relieve could "punch out" without delay. But obviously the rule, if it was a rule, was a rule of reciprocating courtesy. It inured to the benefit of all, for it is a poor rule that does not work both ways.

The court finds that there was no compulsion on these plaintiffs to report ahead of the time scheduled for their actual tours of duty. The brief and varying periods that they were actually on the premises were not in any strict or realistic sense for the benefit of the employer. Rather, the periods represented the margin for safety that any employee inevitably faces when he has to punch a clock to establish his time of starting employment. To say otherwise would be illogical. It would be to incorporate into industry an element that would be unique. Generally speaking, alert employees will see to it that what they are now entitled to they will get in the way of the accepted and agreed-upon terms of employment. True, there will be disputes and therefore, on occasion, litigation.

Here, however, the court has concluded that plaintiffs' grievances are born of class consciousness and are lacking in the substance that the legislation was designed to protect.

Judgment must be entered for the defendant.